(20 App. Div. 286.)

### COMMERCIAL BANK v. CATTO et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1897.)

MORTGAGES—ASSIGNMENTS—CONSIDERATION.

 A mortgage was executed to secure indorsements made by the mortgagee, who assigned the mortgage to plaintiff, who held the indorsed paper, to secure an indebtedness of the mortgagor to plaintiff, and to another, for whom plaintiff agreed to act as trustee. *Held*, that there was a sufficient consideration between the mortgagor and the mortgagee, and between the mortgagee and plaintiff, to enable plaintiff to foreclose the mortgage as against one who had purchased the property subject to the mortgage.

Appeal from special term, Monroe county.

Action by the Commercial Bank against Beaman Catto and others. From a judgment for plaintiff, defendant Catto appeals. Affirmed.

This is an action to foreclose a bond and mortgage executed by James E. Briggs to his son William H. Briggs, dated the 28th of October, 1892. The bond was in the penalty of $60,000, and the mortgage secured the payment of $30,000, and it provided that $1,000, with interest, should be payable every six months until five payments were made, and after that in $2,500 payments, all with interest until paid. The property mortgaged was the "Brackett House Property," so called, located in the city of Rochester. The appellant and his wife, together with James E. Briggs, Moses Foltz, and David J. Kirkpatrick, were made defendants. The action was commenced the 31st day of March, 1896, and the complaint claimed default in the payment of about $2,500 due on the bond and mortgage, and about $12,500 to grow due thereon. The complaint also alleged an assignment of the bond and mortgage to the plaintiff on the 28th of October, 1892. The defendant Catto, in his answer, among other things, alleged that the defendant Briggs was at one time the owner of the mortgaged property; that he sold and conveyed it to the defendant Foltz in August, 1893; that, to induce Foltz to make the purchase, Briggs represented that the Brackett House property was worth $165,000, that it had cost him (Briggs) $150,000, and that he had made repairs thereon to the extent of $30,000; that these representations were false, intended to deceive Foltz, and that the cashier of the plaintiff's bank (the bank then holding the bond and mortgage in suit by assignment) and other officers of the bank participated, knowingly and fraudulently, in the false representations, and in the scheme to induce Foltz to purchase the property·

that, relying on such representations, he purchased the property, and was greatly deceived and injured; that the property cost but $85.000; it was not worth what it was represented to be, and the repairs thereon had not exceeded $15,000; that the bond and mortgage were without consideration as between the parties thereto; that the plaintiff received the assignment without consideration; that on the 20th of March, 1896, Foltz sold and conveyed to Catto the mortgaged premises, for the consideration of $100,000, by warranty deed, and that Catto received said premises subject only to a mortgage in favor of the Rochester Savings Bank of $55,000, and a $10,000 mortgage held by the plaintiff (not the one in suit), in which deed Foltz covenanted that there were no other mortgages or liens upon the premises except these two mortgages; that Catto gave a mortgage to Foltz to secure $10,500 as a part of the purchase money, and made an arrangement with Foltz by which Foltz was to remain in possession of the mortgaged premises as mortgagee, with authority to collect the rents, and apply the same to the payment of this bond and mortgage; that the mortgage in suit was a cloud upon Catto's title; and demanded judgment that the mortgage in suit be canceled and discharged of record, and that the defendant should have such further relief as should be just. The action was tried at the Monroe equity term, held in June, 1896; and, so far as concerns the defendant Catto, the case was tried by the court. The court rendered its decision, stating the grounds thereof to be that the fraud as claimed, between Briggs and the bank upon Foltz, in the purchase of the property, was not sustained, and stating the amount due and to grow due upon the mortgage and bond, and directing the usual judgment of foreclosure and sale. There were other findings, which did not affect this defendant Catto. Upon the trial the bond and mortgage were introduced in evidence, and the assignment thereof, which was absolute and unconditional, to the plaintiff; and the allegation of the complaint as to there being a portion of the bond and mortgage due at the time of the commencement of the action, and a portion not due, was established by the evidence.

On the 29th of October, 1892, the day following the execution of the bond and mortgage in suit, the parties to that mortgage and the plaintiff entered into a written contract, which recited the execution of the bond and mortgage, and the assignment thereof by the mortgagee to the bank, and the assignment of certain leases, and also that the mortgagor, James E. Briggs, was indebted to the plaintiff in the sum of $20,000, and indebted to the Central Avenue Hotel Company (the party from whom he purchased the Brackett House) in the sum of $10,000, secured by his bond and mortgage. It further provided: "Now, therefore, it is hereby mutually agreed that said bond and mortgage first above mentioned [the one in suit] are given and assigned as aforesaid, in trust for securing the said indebtedness to both the said bank and the hotel company, and to protect the same by providing: First, for interest on the same, and on a first mortgage of sixty thousand dollars on said property [the Brackett House property] to Rochester Savings Bank; second, the city and county taxes; third, water rates: and, fourth, the insurance,—and that the rents upon the leases so assigned to be collected from month to month by the said James E. Briggs shall be deposited upon special account in said Commercial Bank from month to month, and to be applied by said Commercial Bank, to whose account they are to be deposited, to: First, the payment of the interest on said indebtedness according to the terms thereof, including said savings bank bond and mortgage; second, the payment of the city and county taxes; third, the payment of the city water rates; fourth, the payment of the installments of principal provided in the conditions of the bond and mortgage last made, to wit, to William H. Briggs; fifth, the payment of the insurance, which is to be increased at least sixty-five thousand dollars, exclusive of elevator and boiler insurance. It is further mutually understood and agreed that, when the terms of said last bond and mortgage so assigned shall have been met by said rents or otherwise, the same shall be canceled, discharged, or assigned, as the said James E. Briggs shall in writing request." This instrument was under seal. It appeared from the evidence that considerable commercial paper that had been made by James E. Briggs, and held by the plaintiff, had been indorsed by the son William H. Briggs, and the Briggses testified that the mortgage was executed to William H. to secure him upon these indorsements. It appeared that the consideration that the defendant Briggs received for the Brackett House property was the conveyance by Foltz to him of about 110 acres of farming land near Tonawanda, in the county of Niagara. The price

of this land was called $85,304.25; the value of Briggs' interest in the Brackett House property was called in the trade $75,000; and Briggs agreed to pay to Foltz the difference between the $85,304.25 and the $75,000 in payments by installments thereafter. Evidence was given tending to show the value of the land conveyed by Foltz in Niagara county, at booming prices, at from $700 to $750 per acre. Foltz was a witness upon the trial, and testified that, before he deeded to Catto, he became aware from what transpired in a litigation in Niagara county that the Brackett House property did not cost Briggs, as he had represented, over $160,000, but it had cost him only $85,000. The defendant Catto alone appeals from the judgment of foreclosure. The Brackett House property was deeded by Briggs to Foltz, subject to the lien of the mortgage in suit, and other liens.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

John Van Voorhis, for appellant.

Edward Harris, for respondent.

WARD, J. The defense of the appellant, Catto, and of the defendant Foltz, to the bond and mortgage in suit, was based upon an assumed fraud that had been practiced by the defendant Briggs upon Foltz. The finding of the trial court that no fraud had been perpetrated by Briggs and the plaintiff's officers upon Foltz is so far sustained by the evidence that we are not at liberty to overrule the conclusions of the trial court upon the subject. If we understand the contention of the appellant, Catto, it is that, by reason of this assumed fraud, the mortgage in suit became vitiated and void, or, at least, so far tainted with the fraud that its foreclosure will not be decreed by a court of equity. It is difficult to see how the appellant can avail himself of this assumed fraudulent transaction between the other defendants, Briggs and Foltz, and the learned and able brief of the appellant's counsel has failed to point out clearly how this can be done; but, be that as it may, it is sufficient to say that, eliminating the fraud from the case, the appellant's defense fails altogether, unless it can stand upon the proposition that there was no consideration for the bond and mortgage as between the plaintiff and the Briggses, and it is not in a position to enforce these securities, because the claims or demands to secure which the bond and mortgage were assigned to the plaintiff as collateral were not due at the time of the commencement of the action. A careful review of the evidence does not lead to the conclusion that either of these defenses was established. The Briggses were parties to the contract of transfer of the bond and mortgage to the plaintiff. The statement of facts above given shows that a portion of the amount secured by the bond and mortgage was not only due at the time of the commencement of the action, but there was a sufficient consideration both for the execution of the bond and mortgage, as between the Briggses, and also of the assignment thereof to the plaintiff.

We have considered the other points raised by the appellant's counsel, but are unable to discover any good reason that should lead to the reversal of the judgment appealed from, and we are led to the conclusion that the judgment should be affirmed, with costs. All concur.